■Tauiabebbo, J.
In two separate actions against I). H. Mallory and T. D. Waddell, judgments were obtained against them and executions issued. The defendant, Lewis, the deputy of the plaintiff, then sheriff of Caddo Parish, having these executions in his hands was instructed to seize certain slaves pointed out to him as property of Waddell. Failing to make the seizure as instructed by the attorneys of the judgment creditors, and no other property being found upon which the executions could be levied, recourse was taken upon Simpson, ihe sheriff, and his sureties. Judgments were rendered against them for the amounts claimed, with judgment over against Lewis, the deputy, called in warranty by his principal. On appeal to this Court the judgment was modified. (13th Annual, 437.) Execution issued on the amended judgment and was satisfied by the seizure and sale of the property of Hailey and Markham, sureties of sheriff Simpson. The present suit is brought for their benefit against Lewis, the deputy, and his sureties.
The defence is a special denial of any misfeasance in office on the part of Lewis, the deputy-sheriff; the prescription of one and two years and the judgment of this Court in the case referred to is set up as res judicata. Judgment was rendered in the Court below sustaining the plea of res judicata as to Lewis, and dismissing as in case of nonsuit as to the other defendants.
From this judgment the plaintiff has appealed'. It does not appear that the defendant, Lewis, appealed from the judgment rendered against him as warrantor in the suit by the judgment creditors against the *457 sheriff and his sureties. He signed with the defendant, Simpson, and his sureties, an appeal bond in favor of the plaintiffs, but the plaintiffs had obtained no judgment against him. He gave no bond in favor of the only party that did obtain judgment against him. There being then no appeal from the judgment so far as it affected him, the decree of the lower Court rendering judgment over against him was ooram nonjudice in the appellate Court, and hence no action was taken by that Court in regard to it. "We cannot adopt the view which the defendants seem to take of the condition of the case after the revision of the judgment by the appellate Court. That Court, very properly it seems, annulled and reversed the judgment of the Court of the first instance, in order to correct a manifest error as to the amount that was awarded to the plaintiffs ; it could only act upon what was before it by appeal. The judgment of the lower Court in favor of the principal against his deputy not appealed from, must therefore be considered as res judiccda against the deputy, and not res judicata, as contended for by the defendants, in his favor.
This judgment the defendants hold is a nullity, if it does not inure to their benefit. This would be using it both as a sword and a shield. Having specially plead it in their answer as res judicata, they asserted its validity, and cannot aver its nullity, when invoked against them.
The plea of prescription we think cannot avail the defence. The act of misfeasance complained of occurred in the month of June, 1856, by the omission of the deputy-sheriff, to seize property under the execution placed at that time in his hands. The suit to render the sheriff and his sureties liable was instituted in the December following, less than one year from the date of the omission complained of. Service of citation on Simpson, the sheriff, was made on the 30th December, 1856. From that time until the final decree, of the appellate Court in the case, about the 1st of August, 1858, suspension of prescription took place.
The suit to recover from the deputy and his sureties the amount paid by the sureties of the sheriff was filed 3d November, 1859, and the defendants answered on the 17th of April, 1860, less than two years from the date of the decree of the appellate Court.
But it is contended by the defendants that if the deputy sheriff was liable, as alleged, he was guilty of a gross offence and could not be proceeded against after the lapse of one year, and that his sureties occupy the same position in that respect that he does. They hold, moreover, that the prescription of two years as fixed by law (Bevised Statutes, p. 524, section 10,) applies only to sheriffs and not to their deputies. The law referred to provides that “the sheriffs and their sureties shall be able to prescribe against their acts of misfeasance, nonfeasance, costs, offences and quasi-offences, after the lapse of two years from the day of the omission or commission of the acts complained of.” Although deputy sheriffs are not named in the statute, a fair construction of it, we think, will authorize the conclusion that they are embraced in its provisions.
The sheriff and his deputy are, in a legal sense, the same person, the act of the deputy is the act of the sheriff. Qui facitper alium, facitperse. The law would be anomalous, if after the lapse of one year from the time of *458 an act of omission or commission by a deputy-sheriff, the sheriff were made responsible for it, without recourse upon the deputy who had caused him the injury. If the prescription of one year shielded the deputy, the sheriff would be without redress against his deputy for all acts of the deputy for which the sheriff might be made liable after the lapse of one year, for the reason that no cause of action against the deputy would arise until his principal was j>roceeded against. An action against the deputy for misfeasance in office brought by the sheriff is essentially of the same nature as an action brought for the same cause against the sheriff, and the prescription of such an action must stand upon the same basis. The sureties of the deputy are in the same attitude with their principal. Their obligation arises ex contractu and not ex delicto.
On the merits, the judgment being against the deputy, it is prima facie evidence against the sureties. The prescription against them, they endeavor to rebut by aiming to show that the property which the deputy sheriff was required to seize by the judgment creditors did not belong to the defendant in execution. A sale of these slaves, two of which were pointed out by the creditors.or their agents as belonging to the defendant Waddell, was it seems effected by him to Mallory, his father-in-law, living in Panola County, Texas. This sale, it appears, bears date about the 27th March, 1856. This sale, the plaintiffs resist as being simulated and unfounded. To make out the simulation, they show, that at the time it purports to have been made, Waddell was threatened with heavy judgments, which a few weeks afterwards were rendered against him. That the property conveyed was the only property out of which these judgments could be made. That the slaves required to be seized remained in possession or under the control of the defendant until some time in the month of June, after the alleged sale took place. That Mallory permitted one of the three slaves to be seized and sold for a debt of Waddell, after the pretended purchase, without asserting any claim to the slave. That no registry of the sale was made in this State, and that the slaves were not delivered to Mallory, the purchaser, until the 1st óf June, nearly six weeks after the judgments^ of the creditors, Marshall & Co. and Peet, Sims & Co., had been rendered and recorded. The tenor of the evidence satisfies us that the pretended sale was a mere simulation, and that no title passed to Mallory. It does not appear that the deputy required an indemnity from the creditors when they required him to seize the two remaining slaves, and it is not probable that he believed them to be the property of the vendee. On the contrary, it is clearly shown that the deputy-sheriff, after he received the execution, instead of proceeding to seize the property at once as required, went to the residence of the defendant’s fathér and informed him that he held an execution against the property of his son ; that the father on the next day had a conversation with the witness, Harper, who had the slaves then in his possession under hire, during which interview the witness informed him that a sale of the slaves in Texas, without registry in Louisiana, would not keep them from seizure by Waddell’s creditors, and the witness testifies that on that night the slaves disappeared.
We think the plaintiffs entitled to a reversal of the judgment of the lower Court, and of judgment in their favor.
*459 It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled, avoided and reversed. It is further ordered that the plaintiffs recover from the defendants, in solido, (for the use of Henderson, Markham and John P. Hailey,) the defendants being John M. Lewis, H. J. G. Battle, Samuel Ford, Lawrence P. Crain and W. W. George, the sum of one thousand and fifty-four dollars and twenty-five cents, with five per cent, interest thereon, from the 2d day January, 1857, and the further sum of seven hundred and seventy-eight dollars and severity-five cents, with like interest, from the day last named, and the further sum of one hundred dollars and fifteen cents. And it is further ordered that said defendants and appellees pay all costs of this suit in both Courts.